852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nadine WALLER, Plaintiff-Appellant,
v.
Wendell R. THAMES, and Pepsi-Cola Corporation, Defendants-Appellees.
 No. 87-1603.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1988.
 
 Before ENGEL, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an employment discrimination case brought in federal court under 42 U.S.C. Sec. 1981. Plaintiff also asserts claims under Michigan's Elliott-Larsen Civil Rights Act, M.C.L.A. Sec. 37.2202(1)(a), and under the common law of Michigan.
 
 
 2
 Plaintiff alleges that during the course of her employment with defendant Pepsi-Cola Corporation she was harassed on account of her race and sex by her supervisor, defendant Wendall Thames. She further alleges that she was constructively discharged in violation of an implied employment contract and in violation of the federal and state statutes.
 
 
 3
 The district court granted summary judgment to the defendants on the Sec. 1981 and Elliott-Larsen racial discrimination claims. Plaintiff's state law claims for wrongful discharge and sex discrimination were dismissed under the authority of United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Plaintiff has appealed. We agree with the district court that no genuine issue of material fact was presented, and we shall affirm the court's judgment.
 
 
 4
 Plaintiff was employed by Pepsi-Cola as a data entry editor from June 15, 1982, to January 15, 1983. In this position she organized raw financial data and checked for errors before the data were entered into Pepsi's computer system. She worked under the supervision of defendant Thames (a black person, like plaintiff) until she was permanently laid off in January of 1983 under a reduction in force.
 
 
 5
 Six months later, on the recommendation of Mr. Thames, plaintiff was rehired to fill a vacant position as data entry editor. Mr. Thames' recommendation was unusual: we are told that the rehire was contrary to a company policy of not recalling laid-off employees, and that plaintiff was the only laid-off salaried employee ever to be recalled by Pepsi's Michigan division.
 
 
 6
 Plaintiff accepted the offer of reemployment and returned to work on July 5, 1983. Her salary, $11,350 per annum, was the same salary she had been receiving prior to being laid off. Her supervisor was again defendant Thames.
 
 
 7
 Plaintiff continued in the position of data entry editor until November of 1984. During this second period of employment she was evaluated as performing at a "commendable" level, and she received two salary increases. On November 13, 1984, however, she quit her job after a meeting in which Thames discussed two errors in her work. She was earning $13,600 per year when she resigned.
 
 
 8
 To avoid summary judgment under Fed.R.Civ.P. 56, a plaintiff must demonstrate the existence of evidence creating a genuine issue of material fact. Celotex Corp. v. Catrett, 91 L.Ed.2d 265, 273 (1986). Plaintiff cannot meet this burden by relying upon mere conclusory assertions, but must show that there is competent, admissible evidence of specific facts. See Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69-70 (6th Cir.1982). Affidavits, to be sufficient, must affirmatively demonstrate the affiant's competence to testify. See Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir.1985). Similarly, affidavits composed of hearsay or opinions do not satisfy Rule 56(e) and must be disregarded by the court. See, e.g., State Mutual Life Assurance Co. v. Deer Creek Park, 612 F.2d 259, 268 (6th Cir.1979).
 
 
 9
 Plaintiff claims that she was the victim of race-based pay discrimination and race-based harassment that caused her to resign. She alleges that Mr. Thames harassed her because of her race, giving her too much work and yelling at her and not at white employees. She also claims that Thames told her in 1983, when he recalled her from layoff, that the Pepsi management was reluctant to rehire her because "black girls have a lot of babies." (Thames denies having made the comment.) Plaintiff relies on the affidavits of two former Pepsi-Cola employees, Renora Sanford and Thelma Hickman; a preliminary staff report written by a staff member of the Michigan Civil Rights Commission (MCRC); and her own deposition.
 
 
 10
 Upon careful review of the plaintiff's evidence we conclude that plaintiff has not established the existence of a genuine issue of material fact. The affidavits and the report upon which she relies are simply not probative of racial discrimination. For example, Renora Sanford stated that Thames loved to "flaunt" his white girlfriend to black employees and had "had a very tyrannical personality toward his employees, especially Nadine." This proves nothing at all, of course. Thelma Hickman left Pepsi-Cola on disability leave in October of 1982, two years before plaintiff resigned, and her evidence therefore had little value. She did recall that "white employees were paid more than black employees with the same experience," and that Thames "would yell at a black employee who flexed in late but would not yell at white females who flexed in late." Neither Hickman nor Sanford ever worked under Thames' supervision.
 
 
 11
 Plaintiff attempts to rely upon a staff report prepared by a Ms. Adkins, of the Michigan Civil Rights Commission, but that reliance is misplaced. It is true that final EEOC probable cause determinations may be admitted in employment discrimination cases. See McClure v. Mexia Independent School District, 750 F.2d 396 (5th Cir.1985) (applying Fifth Circuit rule of per se admissibility of probative EEOC report in Title VII and Sec. 1983 case); cf. Johnson v. Yellow Freight Systems, 734 F.2d 1304 (8th Cir.1984) (holding that court did not abuse its discretion in denying admission of EEOC report in Sec. 1981 claim). This court has held that final EEOC reports may be admitted in the trial court's sound discretion. See Heard v. Mueller Co., 464 F.2d 190 (6th Cir.1972) (declining to follow the Fifth Circuit in creating a per se rule of admissibility.) But unlike an EEOC Cause Determination, which is the final step in the EEOC process, an MCRC staff report is simply the first preliminary step in the Michigan agency's procedure. Under the Elliott-Larsen Act, no findings as to discrimination could be made until there had been a formal complaint, an opportunity for discovery, and an adversarial hearing. See M.C.L.A. Secs. 37.2602-.2606; Michigan Civil Rights Commission Rules of Procedure, Rules 37.5-37.16, reprinted in 8A BNA, Labor Relations Reporter, 455:1071, 455:1073-80.
 
 
 12
 Administrative findings on an employment discrimination claim may be admitted as evidence under Rule 803(8)(C), Fed.R.Evid., as an exception to the hearsay rule. Chandler v. Roudebush, 425 U.S. 840, 863 n. 39 (1976). The staff report in the case at bar was not a final report containing administrative findings, however, but simply part of an investigatory file. Appellate courts have generally upheld the exclusion of EEOC investigatory files, which often represent a " 'mish-mash of self-serving and hearsay statements and records; ... [J]ustice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross-examination.' " Tulloss v. Near North Montessori School, 776 F.2d 150, 154 (7th Cir.1985), quoting Gillen v. Federal Paper Co., 479 F.2d 97, 99 (2d Cir.1973). See also Olitsky v. Spencer Gifts, Inc., 842 F.2d 123 (5th Cir.1988) (holding that admission of EEOC file in ADEA case violated Sec. 706(b) of Title VII, 42 U.S.C. Sec. 2000e-5(b), which prohibits use of conciliation file as evidence in a subsequent proceeding without written consent of parties). Compare McClure v. Mexia Independent School District, 750 F.2d at 397, 399-403 (5th Cir.1985) (improper admission of EEOC file was harmless error).
 
 
 13
 The author of the preliminary staff report at issue here had no personal knowledge of the events in question, and she did not adjudicate anything. See, e.g., Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir.1988); McCluney v. Jos. Schlitz Brewing Co., 728 F.2d 924, 929-30 (7th Cir.1984). The district court did not abuse its discretion in declining to consider the staff report.
 
 
 14
 Defendants showed in their affidavits that the criticism to which plaintiff was subjected was for actual errors in her work; that she was not asked to do work in excess of that required of others; and that she was paid slightly less than an employee with significantly greater education and four years of accounting and billing experience. With respect to Thames' alleged comment that Pepsi management was reluctant to rehire plaintiff because "black girls have a lot of babies," the fact is that plaintiff was rehired, even though company policy indicated that she should not have been.
 
 
 15
 Under the McDonnell Douglas allocation of burdens of proof--an allocation that applies to Sec. 1981 cases as well as to cases brought under Title VII--plaintiff had the burden of showing that defendants' articulated reasons were a mere pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court correctly found that plaintiff had not sustained her burden in this respect. After reviewing the record, we agree with the district court's conclusion that plaintiff failed to produce meaningful evidence of discrimination based on race.
 
 
 16
 Having found no probative evidence of discriminatory intent, we need not reach the issue of constructive discharge. We note, however, that the record does not contain evidence of such objectively intolerable working conditions as would support a finding of constructive discharge. See Geisler v. Folsom, 735 F.2d 991, 996 (6th Cir.1984).
 
 
 17
 The judgment is AFFIRMED.