**Albert L. THOMAS, Plaintiff,**

v.

**HOYT, BRUMM & LINK, INC., Defendant.**

No. 93–CV–74344–DT.

United States District Court, E.D. Michigan, Southern Division.

Oct. 17, 1994.

Thomas E. Marshall, Detroit, Michigan, for plaintiff.

Charles E. Clos, Southfield, Michigan, for appellant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This race discrimination action is presently before the Court on the Motion of Defendant Hoyt, Brumm & Link, Inc. for summary judgment and dismissal of Plaintiff's Complaint in its entirety. Plaintiff has filed a Response to Defendant's Motion, and on June 30, 1994, the Court heard oral argument on this matter.

Having reviewed and considered the parties' respective briefs and supporting documents, and having heard the oral arguments of counsel at the hearing held on June 30, 1994, the Court is now prepared to rule on Defendant's Motion. This Opinion and Order sets forth that ruling.

### II. FACTUAL BACKGROUND

Plaintiff Albert L. Thomas is an African-American journeyman pipe fitter who is a member of Pipe Fitters Local 636 of Detroit. Defendant Hoyt, Brumm & Link ("HBL") is mechanical contractor which operates out of two facilities in Ferndale, Michigan. At these two Ferndale facilities, HBL modifies, repairs and fabricates some of the materials used in performance of its contracts, but the majority of the company's business is performed away from its facilities, "on site", i.e., in and on the premises of the parties who contract with HBL for work to be done.

HBL typically is simultaneously engaged in the performance of multiple contracts at different sites for various businesses. Each site is denoted as a separate "job". It is HBL's practice and the general practice in the industry to "hire" skilled tradesmen, such as pipe fitters on an "as needed" job-by-job basis.

HBL is a member of the Metropolitan Detroit Plumbing and Mechanical Contractors Association. The Association, acting on behalf of its member contractors, entered into a Collective Bargaining Agreement effective July 1, 1991, with Pipe Fitters Local 636 (the "Union"), pursuant to which Association members, including HBL, fill their needs for pipe fitters from a Local 636 "union pool."

Under this "union pool" arrangement, HBL informs the Union how many pipe fitters it needs for a given job, and the Union assigns that number of next available Union members to HBL and the job. The members referred by the Union are selected by the Union, not HBL. HBL has no choice but to employ whomever the Union assigns. HBL has no permanently employed pipe fitters and has never sought to employ a pipe fitter on a permanent basis.

HBL is also required to comply with the terms of the union's Collective Bargaining Agreement ("CBA") with the Association, including the wage provisions ("Union Scale") and other terms of employment. HBL has no discretionary power to pay a pipe fitter less than Union Scale, and although it does have the discretion to pay more than Union Scale, it does not do so.

The Agreement does not restrict HBL's power to terminate the pipe fitters' employment when they are no longer needed on the job for which they were hired. Nor does the

Agreement require HBL to transfer pipe fitters who are no longer needed to another job, or to re-employ such "laid off" pipe fitters, either on a contemporary or future job, or at one of HBL's own facilities.

The Agreement does give HBL the right to transfer a pipe fitter from one job to another, if it so desires. The Agreement also gives HBL the right to terminate a pipe fitter's employment for reasons including (but not limited to) excessive tardiness, being absent without leave from an assigned work area, failure to perform team-shared responsibilities, failure to comply with work rules and refusing to obey instructions of supervisory personnel.

In June of 1992, HBL put in a call to the Union for pipe fitters to work on the "Ford job". The Union assigned Plaintiff Albert Thomas, along with several other union members, to HBL for that job. Thomas was the only African–American pipe fitter assigned to the Ford job. He worked for HBL for approximately one month from June 29 until July 31, 1992.

According to HBL, Thomas was an unreliable worker. He frequently wandered away from his work area, and often came to work late. Plaintiff denies being away from his work area (although he admits leaving his area to use the bathroom and to use the phone), and he also denies being late for work.[1]

Plaintiff's immediate supervisor on the Ford job was John Pastorius, who, like Plaintiff, is a pipe fitter and a member of the Union. As provided in the Union Agreement, HBL appoints one of the pipe fitters assigned by the Union to be the "foreman". The foreman acts in a first-line management capacity, being responsible for assigning and supervising the performance of work as well as performing time-keeping and other record-keeping functions.

In this capacity, Pastorius on numerous occasions verbally reprimanded Plaintiff for leaving his assigned work area and instructed him not to do so again. Pastorius also noted Plaintiff's chronic tardiness.

By the end of July 1992, the Ford job was winding down. Consequently, HBL asked the pipe fitters working on the job for volunteers for layoff. According to Plaintiff, no one volunteered for layoff. Rather than terminate Plaintiff's employment (even though it had cause to do so under the CBA), HBL decided to transfer Mr. Thomas to another job site, the "Mazda site", where HBL believed the time constraints were less pressing and Plaintiff's work habits would not impact on the work schedule deadlines.

The Mazda job was essentially the same as the Ford job on a slightly smaller scale, and was approximately 10–12 miles away from the Ford job site. Plaintiff, however, refused to accept the transfer to the Mazda site and refused to take a voluntary layoff, and instead, demanded that HBL terminate him. HBL did, in fact, terminate Plaintiff's employment. The decision to terminate Thomas's employment was made by Plaintiff's immediate supervisor, foreman John Pastorius after Pastorius obtained the approval of HBL's general manager, Larry Kessler.

Following the termination of his employment with HBL, Thomas instituted this race discrimination lawsuit alleging that HBL is liable to him for violation of (1) the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"); and (3) the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 et seq. (the "Elliott–Larsen Act").

In his Complaint, and in his deposition, Plaintiff alleged as the principal basis for his claims of discrimination against HBL that HBL terminated his employment because he is an African–American. He also alleges that during the course of his employment: (1) HBL did not hire him as a "permanent" in-house pipe fitter because he is black; (2)

---

1. HBL has documented 10 instances of Thomas reporting late for work from July 1 through 31, 1992. [See letter dated August 7, 1992 from Larry Kessler, HBL's Field Operations Manager, to Stephen Glasser of the NLRB at Plaintiff's Ex. D.] Plaintiff has presented as evidence of his not being tardy, his pay check stub for the week ending July 26, 1992 showing that he was paid for 40 hours work. *Id.* HBL has stated that it did not dock pipe fitters' wages for tardiness because it was a fairly long trip from Detroit to the Ford job site so supervisors "overlooked a few minutes [tardiness] now and then." [See Deposition of Ed Grainger of Local 636, p. 25, at Plaintiff's Ex. E.]

HBL treated white employees better than him by allowing white employees to practice TIG welding but not allowing him to do so; (3) co-workers subjected him to racially discriminatory comments.

HBL has now moved for summary judgment contending that Plaintiff has failed to make out a *prima facie* case of discrimination, and even if he has made out a *prima facie* case, HBL has come forward with legitimate non-discriminatory reasons for its actions and Plaintiff has not, and cannot, establish pretext.

### III. *DISCUSSION*

#### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[2] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. ▮ After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

\* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

\* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

\* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

\* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

#### B. *PLAINTIFF'S DISCRIMINATION CLAIMS*

▮ It is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248,

---

**2.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 33 (1993 Supp.).

256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992).

■■■ If the plaintiff successfully proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas, supra; Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991). Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *Ang v. Procter & Gamble Co., supra*. It is not enough, however, for the plaintiff to disprove the employer's asserted reason; rather the plaintiff must prove by a preponderance of the evidence that the employer's decision *was in reality racially premised. St. Mary's Honor Center v. Hicks, supra*, 509 U.S. at ——, 113 S.Ct. at 2753 (emphasis in original).

■■■ The *McDonnell Douglas/Burdine* formula is applicable not only to claims brought under Title VII, but also to claims under 42 U.S.C. § 1981, *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), as well as claims under the Michigan Elliott–Larsen Act, *Brocklehurst v. PPG Industries, Inc.*, 836 F.Supp. 1354 (E.D.Mich.1993). Therefore, it is appropriate for a District Court to "lump together" a plaintiff's Title VII, Section 1981 and state law discrimination theories and apply the *McDonnell Douglas/Burdine* evidentiary framework in analyzing the factual and legal merits of the Plaintiff's claims. *Mitchell v. Toledo Hospital, supra*, 964 F.2d at 582.

■■■ Under *McDonnell Douglas* and *Burdine*, to establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct he was treated differently than similarly-situated non-minority employees. *McDonnell Douglas v. Green, supra; Texas Department of Community Affairs v. Burdine, supra; Ang v. Procter & Gamble Co., supra; Mitchell v. Toledo Hospital, supra.*

### 1. Discriminatory Discharge/Transfer

Plaintiff claims that the circumstances surrounding his discharge amount to discrimination because HBL wanted to transfer him to a "less desirable job site" while white coworkers with less seniority were not being transferred or discharged.[3] His assertion that the Mazda job was "less desirable" is based on Plaintiff's purely personal preferences unrelated to the job itself: that he "didn't want the transfer because it was ten miles further out and [he] was having trouble with his car" and because he likes working with stainless steel and working on paint lines. [Plaintiff's Deposition, pp. 84, 96 at Defendant's Ex. A.] Plaintiff admits that had he accepted the transfer to the Mazda site, he would not have been terminated.

As indicated above, HBL's decision to transfer Plaintiff to the Mazda site because the time constraints on that job were not as tightly limited as on the Ford job. The company, thus, believed that Plaintiff's tendencies to wander away from his assigned work area and come to work late would not affect the Mazda job as greatly as they had on the Ford job.

Defendant argues that Plaintiff has not satisfied the *McDonnell Douglas/Burdine* criteria because he has not shown (and cannot show) that he was "qualified" for the job at the Ford site, and he further cannot establish that "for the same or similar conduct, he was treated differently than non-minority employees."

These two arguments are intertwined.

■■■ In order to show that he was "qualified", an employment discrimination plaintiff must show that he was performing his job to his employer's satisfaction. *Ang v. Procter & Gamble Corp., supra*, 932 F.2d at 549; *McDonald v. Union Camp Corp.*, 898

---

**3.** In terms of seniority, Plaintiff claims that he was 16th out of 25 pipe fitters, i.e., there were other pipe fitters who had less seniority than he did.

F.2d 1155, 1160 (6th Cir.1990). A plaintiff cannot create an issue of fact by challenging the judgment of his supervisors, or by questioning the soundness of an employer's business decision. *Id.* Where a plaintiff fails to establish that his qualifications were similar to the qualifications of non-protected class employees, summary judgment in favor of the defendant-employer is proper. *Wilson v. Communications Workers of America,* 767 F.Supp. 304, 307 (D.D.C.1991).

With respect to the fourth element, i.e., showing that for the same or similar conduct the plaintiff was treated differently than similarly-situated non-minority employees, the Sixth Circuit has set forth the following requirements for establishing the "comparable" nature of the non-minority employees.

■ As the Court explained in *Mitchell v. Toledo Hospital, supra,*

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects. Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir.1989). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards *and have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531 (S.D.N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir.1987); *Lanear v. Safeway Grocery,* 843 F.2d 298 (8th Cir.1988) plaintiff must prove that he and the white employee were similarly situated in all respects *and that the other employee's acts were of comparable seriousness to his own; Cox v. Electronic Data Systems Corp.,* 751 F.Supp. 680 (E.D.Mich. 1990).

964 F.2d at 583 (some emphasis added.)

In *Mitchell,* the court found no error in the District Court's granting of the defendant's motion for summary judgment because the plaintiff failed to produce sufficient affirma-tive evidence to establish that one comparable's alleged absenteeism and the other comparable's insubordination were of "comparable seriousness" to the conduct (misuse of hospital property) for which she was discharged.

■ Applying the foregoing standards to the facts of this case, the Court finds that Plaintiff has not established that any of his co-worker white pipe fitters were "similarly-situated in all respects" i.e., he has come forward with no white comparables with the same record of tardiness and wandering away from work area.

Moreover, the supplemental post-hearing evidence submitted by Defendant in response to the Court's directive at the June 30, 1994 hearing establishes that non-minority pipefitters and Plaintiff were treated similarly, *not* dissimilarly. Defendant's post-hearing evidence establishes that on July 31, 1992—the same date on which Plaintiff's employment was terminated—Defendant transferred a white pipefitter, Rodney Selph, to another job. That same date, Defendant also laid off a white pipefitter, Durand Hatcher, and two weeks later, Defendant laid off another white pipefitter, Raymond Joganic.[4]

The foregoing evidence demonstrates that Plaintiff has failed to establish a *prima facie* case of discrimination.

### C. *DEFENDANT HAS ARTICULATED A LEGITIMATE NON-DISCRIMINATORY REASON FOR PLAINTIFF'S DISCHARGE*

■ Even assuming, *arguendo,* that Plaintiff has made out a *prima facie* case, HBL has articulated a legitimate non-discriminatory reason for transferring him to the Mazda sites, to-wit, that the time constraints on the Ford site were too tight to allow Plaintiff to continue at that site with his tendency to walk off the job and arrive late for work.

Thus, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were

---

**4.** Defendant also laid off two white plumbers during this two-week time frame who were members of a different union, Plumbers Union Local 98.

a pretext for discrimination. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Ang v. Procter & Gamble Co., supra.* It is not enough, however, for the plaintiff to disprove the employer's asserted reason; rather the plaintiff must prove by a preponderance of the evidence that the employer's decision *was in reality racially premised. St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at ——, 113 S.Ct. at 2753 (emphasis in original).

### D. *PLAINTIFF HAS FAILED TO ESTABLISH THAT DEFENDANT'S ARTICULATED REASON WAS PRETEXTUAL*

Plaintiff appears to believe he can sufficiently establish pretext merely by showing that Defendant's reason is unworthy of belief. Plaintiff apparently has misread the Supreme Court's recent decision in *St. Mary's Honor Center v. Hicks,* 509 U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). While that *was* the position taken by the *dissent* in *St. Mary's,* Justice Scalia, reiterated several times throughout his majority opinion that merely demonstrating that the employer's proffered reason for its actions was not true is not enough to establish pretext. To establish pretext, the plaintiff must show *"both,* that the reason was false, *and* that discrimination was the real reason." 509 U.S. at ——, 113 S.Ct. at 2750. (*See also,* 509 U.S. p. ——, 113 S.Ct. p. 2754 "It is not enough in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.")

Plaintiff claims that reasons proffered are untrue. However, denial of reason is not enough to establish pretext. Plaintiff must provide some evidence which would tend to establish that the true reason for his termination was that he was black.

Plaintiff's only other "proof" of racial pretext is his contention that he had more seniority than some other pipe fitters on the job who were not laid-off or transferred. However, Plaintiff admits that HBL had no obligation under the Agreement to lay off or transfer by seniority. More importantly, however, even accepting as true Plaintiff's contention, he simply has presented *no evidence* to show that his race played any part in HBL's decision.

An alternative method for establishing a case of discrimination is to present credible, direct evidence of discriminatory intent on the part of the decision-makers. *Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111 (6th Cir.1987). *See also, Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307, 312 (1981). To establish a claim of discrimination under such an intentional discrimination theory, the plaintiff must show (1) that he was a member of a protected class, (2) that he was discharged, and (3) that the person discharging him was (a) predisposed to discriminate against persons in the protected class and (b) had actually acted on that predisposition in discharging him. *Schipani v. Ford Motor Co., supra,* 302 N.W.2d at 312.

Plaintiff here has presented absolutely no evidence that decision makers John Pastorius and Larry Kessler were "predisposed" to discriminate against African–Americans or that they "actually acted on that predisposition" in deciding to terminate Plaintiff's employment.

Thus, Plaintiff's claims of discriminatory discharge and discriminatory transfer will be dismissed.

### 2. *Discriminatory Hiring/Failure to Promote*

Plaintiff also alleges that HBL has failed to hire any African–Americans as "permanent" pipe fitters. Plaintiff however has no evidence to substantiate this allegation. Rather, his deposition testimony regarding the hiring of "permanent" pipe fitters demonstrates that this claim is based solely upon Plaintiff's subjective belief:

Q: You allege in paragraph 9(b) that Hoyt, Brumm & Link refused to hire African–Americans as permanent employees?

A: That's correct.

Q: All right. On what basis do you make that claim?

A: Just go and check. If you go and check the company, go all the way back to 1990 or wherever you want to go back to when Larry Kessler became superintendent or whatever, the only way—if they do have a minority in there it's because the union might have set up a

minority steward, and that ain't got nothing to do with Larry Kessler. The union does that. So that'll be the only way a minority get up in there as temporarily steady.

Q: So, it's based upon what you've observed?

A: That's right.

Q: Is there any other reason that you make the claim?

A: And the way they been treating me. . . .

Q: That's the reason why you allege that the employer refused to hire African–Americans as permanent employees?

A: No. It's just obvious.

[Plaintiff's Deposition, pp. 88–89, at Defendant's Ex. A.]

Despite Plaintiff's subjective beliefs, he does not dispute HBL's assertion that, since 1990, the company has had no opening for and has not sought to hire *any* "permanent" pipe fitters.

Plaintiff also alleges in his Response Brief as "evidence" of discrimination, that Defendant has never designated any black pipe fitters as "foremen". However, Plaintiff never alleged in his Complaint or in his Deposition that he ever sought to be named foreman. Rather, his only deposition testimony regarding this "foreman" issue is the following:

Q: In paragraph 9(d) [of Plaintiff's Complaint] you allege that defendant discriminated against you by refusing to promote African–American journeymen. What factual basis do you have for this allegation?

A: Well, I mean, they—this was a Ford job here that they were on, and *I think* they had got some kind of agreement with Ford where they supposed to have so many minorities to hire to get this contract to be in the Ford's, or else Ford—or hire a minority contractor what they are doing no. *So they should have promoted a minority foreman or minority general foreman or superintendent, but they didn't.*

Q: Do you know whether prior to your being terminated in July of '92, whether Hoyt, Brumm & Link had promoted any African–American journeymen in its employ?

A: As far as my knowledge, Hoyt has never, never, never promoted a minority whatsoever form, fashion or style.

Q: Did you have anyone do any investigating for you?

A: No. This is my knowledge.

Q: And your knowledge is based upon just the times that you've worked there and what you've seen?

A: The times that I've been in the—the times that I have went to Hoyt and how they treated me every time I went there to Ferndale.

[Plaintiff's Deposition, p. 92, at Defendant's Ex. A.]

As is evident from the foregoing testimony, Plaintiff's allegations regarding HBL's failure to appoint blacks as foremen is based upon supposition and conjecture, and, thus, is insufficient "evidence" to withstand summary judgment. *See, Simpson v. Midland Ross Corp.,* 823 F.2d 937 (6th Cir.1987).

3. *Discriminatory Treatment During Employment*

 Plaintiff also alleges that HBL treated white employees better than him by allowing white employees to practice TIG welding at one of the Ferndale facilities at the company's expense, but not allowing him to do so. However, TIG, or heli-arc welding, as Plaintiff himself admits, is a skilled trade, separate and distinct from pipe fitting. Plaintiff was not certified as a TIG welder, is not qualified to be employed as a TIG welder, and is not entitled to training as a TIG welder at HBL's expense. HBL admits that some of its employees have been allowed to practice TIG welding at the company's welding shop, but those individuals were hired by HBL *as welders* (or welder trainees), *not* as pipe fitters.

Plaintiff has produced no evidence that non-minority *pipe fitters* were given the opportunity to practice welding on HBL's time. Thus, Plaintiff cannot show that *similarly-situated* non-minority employees were afforded better treatment.[5]

5. Further, to the extent that Plaintiff has attempt- ed to make out a disparate treatment claim based

#### 4. *Racial Comments by Co–Workers*

■ Plaintiff's final allegation is that, during the course of his employment at HBL, he was subjected to racial harassment by co-workers. Plaintiff testified at his deposition that this allegation is based upon one single incident when Plaintiff was seated at the break table with some of his co-workers and the other men had some Brazil nuts which they referred to as "nigger toes". However, Plaintiff admits that the workers were not his superiors, "[T]hose guys were just workers like me. They wasn't my boss." [Plaintiff's Deposition, p. 97 at Defendant's Ex. A]. Plaintiff did not report the incident to any of his superiors and has no evidence that his superiors acquiesced in or even knew about the incident:

Q: Do you know whether the foreman saw any of these events?

A: I'm pretty sure the steward and the foreman had to know something.

Q: On what basis do you claim that they had to know something?

A: Well, because everything travels on the job. Anything that happens, it travels.

Q: All right. What about the general superintendent? Did the general superintendent know or see any of these things?

A: No. Because he was in the trailer and the trailer was 500 feet [away]. and if he did know, it was because somebody told him.

Q: But you don't know whether that occurred, fair statement? You don't know whether somebody told the superintendent?

A: I'm pretty sure he knew something.

Q: On what basis would you say you're pretty sure he knew?

A: Because that's his job.

Q: You're assuming that he knew?

A: That he knows everything, yes.
[Plaintiff's Deposition, pp. 102–103.]

■ It is well-settled that isolated incidents of racial epithets are not sufficient to establish a claim of race discrimination. *See e.g., Gagne v. Northwestern National Insurance Co.,* 881 F.2d 309 (6th Cir.1989); *Erebia v. Chrysler Plastic Products Corp.,* 772 F.2d 1250 (6th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486 (6th Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985).

■ Moreover, no liability for the racial epithets of Plaintiff's co-workers can be imposed upon Defendant HBL because Plaintiff admits he never reported the incident to HBL management and he is unable to produce any *evidence* that HBL otherwise knew about the incident other than his subjective belief that somebody in management must have known about it because "everything travels on the job" and it's the superintendent's job to know everything that goes on. *Respondeat superior* liability can be imposed on a defendant employer for racial harassment only where the evidence shows that the defendant knew of the harassment and failed to take prompt remedial action. *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989). Plaintiff's opinion that management must have known about the incident is insufficient to create a genuine issue of material fact. *Triplett v. Electronic Data Systems,* 710 F.Supp. 667, 672 (W.D.Mich. 1989).[6]

In sum, Plaintiff's claims are predicated upon nothing more than bare allegations of

---

on differences in wages, as Plaintiff's own Exhibit L demonstrates, all of HBL's pipe-fitters were paid the same—$20.25/hour. While Plaintiff alleges at page 14 of his Response Brief that Plaintiff's co-worker, Donald Daley was paid more than he was, Donald Daley was a *certified welder.* Plaintiff was not. There is simply no factual basis for Plaintiff's allegation that "Defendant manipulated its job classification in such a manner as to pay plaintiff and other African–Americans lower wages because of their race."

**6.** Although racial epithets can, under some circumstances, play a role in hostile work environ- ment claims, Plaintiff's counsel admitted at the June 30, 1994 hearing that Plaintiff has no such actionable claim. Furthermore, even in hostile environment cases, the plaintiff must show that any alleged verbal racial harassment was "sufficiently severe or pervasive to alter the conditions of the victim's work environment." *Davis v. Monsanto Chemical Co.,* 858 F.2d 345 (6th Cir. 1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989), *quoting, Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). All that Plaintiff alleges here is one incident of alleged racially discriminatory comments.

discrimination. Since he has produced no record evidence of discrimination, summary judgment will be entered in favor of Defendant and this case will be dismissed in its entirety.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED in its entirety, with prejudice.

### JUDGMENT

The Court having this date entered an Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's Complaint in its entirety,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT of DISMISSAL with prejudice is hereby entered.