Sandra TERWILLIGER, Plaintiff,

v.

GMRI, INC., a Florida corporation, d/b/a
The Olive Garden Restaurant,
Defendant.

Civil Action No. 95–40401.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 10, 1997.

Charles W. Palmer, Robb, Messing, Palmer & Dignan PC, Taylor, MI, for Sandra Terwilliger.

Delaine R. Smith, McKnight, Hudson, Lewis & Henderson, Memphis, TN, Dale L. Hebert, Boothman, Hebert & Eller, PC, Detroit, MI, for GMRI, Inc.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On October 5, 1995, plaintiff Sandra Terwilliger filed the instant case against her former employer, defendant General Mills Restaurants, Inc. ("GMRI") alleging sex discrimination. Presently before this court is defendant's motion for summary judgment filed on December 13, 1996. Defendant argues that plaintiff's claims are both factually and legally wanting. Pursuant to Local Rule 7.1(e)(1), this court has dispensed with oral argument and will decide the motion based upon the parties' written submissions. For the reasons expressed herein, defendants motion for summary judgment will be granted.

## I. FACTS

Plaintiff commenced employment as a line cook at defendant's Olive Garden restaurant in Southgate, Michigan in January, 1990.[1] She continued in that capacity until terminated on August 30, 1993.

There were four shifts available to a line cook: "lunch-close;" "lunch-business decline," "dinner-close" and "dinner-business decline." Each shift had a precise starting time (e.g. 2:00 p.m.), but no established departure time although, generally speaking, an employee scheduled to close had to work a longer shift than an employee scheduled to work business decline. Employees scheduled to work close were required to remain at the Olive Garden until the line area was thoroughly cleaned and prepared for the next shift. In contrast, employees scheduled to work business decline could depart with management authorization if and when patronage slowed. Plaintiff regularly worked the dinner-business decline shift and in fact, preferred to do so because it was most convenient and because it required less cleaning. Typically, her hours were from 4:00 p.m. until 8:30 or 10:00 p.m.

Plaintiff received four performance reviews during her tenure at the Olive Garden, three of which were rated "unsatisfactory." She also received five written admonishments, or so-called "performance counsellings,"[2] for inadequate performance. In June 1992, for instance, plaintiff received a written performance counselling for disobeying management's orders to refrain from taking a break until she cleaned her work station. At that time, plaintiff was advised that any further acts of insubordination or poor work performance could result in her termination.

Having been previously warned of the consequences of failing to follow orders, plaintiff once again defied her supervisor's instructions on August 30, 1993 and was terminated. On that day, plaintiff was scheduled to work the dinner-business decline shift, but agreed to work until close at the behest of Manager Larry Nichols. Despite her promise to work until close, plaintiff "punched out" and left the restaurant at business decline (approximately at 9:30 p.m.) without management permission.

Shortly after her termination, plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights (MDCR) and the Equal Employment Opportunity Commission (EEOC). Plaintiff complained, among other things, that she received less hours and a lower wage rate than similarly situated males. She also complained that she was terminated for an offense which other males similarly situated committed without being discharged.

The MDCR conducted a preliminary examination and issued a "report and recommendation," concluding that "claimant received the lowest starting salary in her classification" and that "four men with less seniority in the same classification received more hours than the claimant." The MDCR staff report also found that "[a] man (John Jones) punched out on three occasions without completing his work before being discharged after the fourth incident. [Yet,] the claimant was discharged the first time she committed this infraction."

On January 10, 1995, plaintiff withdrew her charge of discrimination with the MDCR. In lieu of administrative action, plaintiff filed the instant case on October 5, 1995 pursuant to the Elliott–Larsen Civil Rights Act, Mich. Comp.Laws § 37.2101, *et seq.* Plaintiff makes three allegations in her complaint: (1) that she received less hours than similarly situated male employees, (2) that she received a lower wage rate than similarly situated male employees, and (3) that she was discharged solely on the basis of her sex. On December 13, 1996, defendant filed the instant motion for summary judgment.

---

**1.** Line cooks work in one of three areas within the restaurant: appetizer, saute or window. Plaintiff was primarily assigned to the appetizer station.

**2.** Olive Garden managers complete a form entitled a "Performance Counselling" each time an

employee disobeys a management directive and some action is thereafter taken by management. The form lists the employee's name, the date, the action taken by the employee and the instruction or action taken by management.

## II. ANALYSIS

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### B. Order of Proof in Elliott–Larsen Civil Rights Cases

■ All three of plaintiff's sex discrimination claims are predicated on the Michigan Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101, *et seq.* The Act prohibits an employer from, *inter alia,* discriminating against an individual on the basis of sex. Mich.Comp.Laws § 37.2202(1)(a). Cases brought pursuant to the Michigan Elliott–Larsen Civil Rights Act are analyzed under the conventional three-part framework used in Title VII cases as articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 526, 113 S.Ct. 2742, 2757, 125 L.Ed.2d 407 (1993). *Thomas v. Hoyt, Brumm & Link, Inc.,* 910 F.Supp. 1280, 1285–86 (E.D.Mich.1994); *Byrnes v. Frito–Lay, Inc.,* 811 F.Supp. 286, 291 (E.D.Mich.1993).

> First, the plaintiff has the burden of proving by the preponderance of evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were·not

**1228**

its true reasons, but were a pretext for discrimination.[3]

*Hicks,* 509 U.S. at 526, 113 S.Ct. at 2757 (affirming the test articulated in *McDonnell Douglas Corp.* 411 U.S. at 802–04, 93 S.Ct. at 1824–25 and *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (1981)). Summary judgment is particularly appropriate in Elliott–Larsen cases "where a plaintiff cannot factually establish a prima facie case, or where the plaintiff cannot establish a genuine issue of fact as to whether the non-discriminatory reasons offered by defendant are but a mere pretext." *Transou v. Electronic Data Systems,* 767 F.Supp. 1392, 1400 (E.D.Mich.1991) (citations omitted), *aff'd.* 986 F.2d 1422 (6th Cir.1993). In other words, summary judgment should be granted if a plaintiff cannot meet her first or third evidentiary burdens.

## C. Plaintiff Has Not Met Her Initial or Ultimate Evidentiary Burdens Under the McDonnell Douglas Framework

Defendant argues that this case must be dismissed because plaintiff has not met her threshold and ultimate evidentiary burdens under the McDonnell Douglas framework. This court finds that plaintiff has not satisfied either of her two burdens.

### 1. Plaintiff Has Not Established a Prima Facie Case of Disparate Treatment

■ A plaintiff can meet her original evidentiary hurdle under the McDonnell–Douglas framework of establishing a prima facie case in one of two ways:

(1) by showing disparate treatment through indirect evidence ("disparate treatment approach"), or

(2) by showing intentional discrimination through direct evidence ("intentional discrimination approach").

*Bryant v. Automatic Data Processing, Inc.,* 151 Mich.App. 424, 428, 390 N.W.2d 732 (1986). In the case at hand, plaintiff uses the disparate treatment approach in alleging that defendant discriminated against her on the basis of sex.

■ In disparate treatment cases, four elements must be established to set forth a

prima facie case. First, the plaintiff must show that she is a member of a protected class. *Thomas v. Hoyt, Brumm & Link, Inc.,* 910 F.Supp. 1280, 1286 (E.D.Mich.1994). Second, plaintiff must establish that she was subject to adverse employment action. *Id.* Third, plaintiff must demonstrate that she was qualified for the job. *Id.* Fourth and finally, plaintiff must show that she was treated differently from similarly situated males. The first and third elements are not in dispute in the instant case. Rather, defendants move for summary judgment on the grounds that plaintiff has not satisfied the second and fourth elements with regard to her discriminatory wages, hours and discharge claims.

### a. Plaintiff Has Not Established a Prima Facie Case of Discriminatory Working Hours

Plaintiff's complaint first alleges that she was treated differently from other similarly situated male line cooks with respect to working hours. At her deposition, plaintiff named five line cooks who supposedly received more hours than her: Jim Burke, Brian Cardinal, Gerald Davis, Tim Leske and Paul Toensfeldt. Plaintiff also submitted a table purporting to show that eight line cooks with less seniority than plaintiff (as opposed to the five testified to at her deposition) worked a higher average number of hours than plaintiff:

| Name | Date of Hire | Average Number of Hrs/Wk |
|---|---|---|
| Plaintiff | 1–13–90 | 30.07 |
| Arthur Katterman | 4–1–90 | 31.63 |
| John Jones | 4–15–91 | 33.59 |
| Andre Foggs | 7–16–91 | 32.79 |
| Gerald Davis | 3–20–92 | 48.41 |
| James Jenkins | 9–15–92 | 36.00 |
| Eugene Bonheau | 10–20–92 | 31.88 |
| James Burke | 11–14–92 | 40.68 |
| John Martin | 5–18–93 | 36.58 |

Furthermore, as proof that plaintiff was the victim of discriminatory working hours, plaintiff proffers the MDCR "Staff Report and Recommendations." This report states that defendant "usually gave the employee with most seniority the most hours, if their performance was good," that "claimant's performance was very good," and that employ-

---

**3.** This court will refer to this burden-shifting analysis as the "McDonnell Douglas framework."

ees with less seniority received more hours of work than plaintiff.

■ This court finds that plaintiff has failed to make a prima facie case of sex discrimination with respect to working hours. First, plaintiff's reliance on the MDCR report is entirely misplaced. The Sixth Circuit has held that preliminary agency investigative reports are self-serving and hearsay statements, and thus inadmissible on summary judgment. *Waller v. Thames and Pepsi–Cola Corporation,* 1988 WL 76532 at *2, 852 F.2d 569 (6th Cir.1988) (unpublished opinion). Plaintiff cannot establish a genuine issue of material fact through the introduction of the MDCR report since this court is proscribed from reviewing the report at this stage in the litigation.

■ Putting the agency report aside, plaintiff otherwise has not established a prima facie claim concerning discriminatory work hours. Plaintiff has adduced no evidence establishing the fourth element in a disparate treatment case, i.e. that male employees who allegedly received more hours were "similarly situated in all respects." *Thomas,* 910 F.Supp. at 1287 (citation omitted). A person is deemed "similarly situated in all respects to the plaintiff if the person dealt with the same supervisor, was subject to the same performance standards, and engaged in the same work without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." *Id.* (citation omitted).

Not only has plaintiff failed to proffer any evidence with respect to this issue, but defendant has offered evidence showing that the allegedly similarly-situated line cooks are indeed distinguishable from the plaintiff. For example, defendant submitted payroll processing reports and affidavits showing that, of the five employees named by plaintiff at her deposition, only three (Burke, Davis and Toensfeldt) received more hours than her. And, of the three who averaged more hours, each can be set apart from plaintiff based on the shift he worked. Burke generally

worked the lunch shift, while Toensfeldt and Davis primarily worked the dinner-close shift. In contrast, plaintiff typically worked, and indeed chose to work the dinner-business decline shift, which provided less hours than the other two shifts. In sum, this court finds that plaintiff has failed to establish a prima facie hour discrimination case because she has failed to show a genuine issue of material fact that employees who supposedly received more hours were similarly situated. *See Cox v. Electronic Data Systems,* 751 F.Supp. 680, 690 (E.D.Mich.1990) (holding that it is fundamental to plaintiff's disparate treatment claim to show comparables are similarly situated "in all respects").

### b. Plaintiff Has Not Established a Prima Facie Case With Respect to Discriminatory Wage Rates

Defendant insists that plaintiff has not established a prima facie disparate treatment wage rate case because she has adduced no evidence showing that she was similarly situated to other males who received a higher wage rate. This court agrees.

In support of her claim, plaintiff submits a table showing that plaintiff's starting rate was $6.25 per hour and the starting wages of three male employees, namely Toensfeldt, Leslie and Cardinal, was $7.00, $6.50 and $7.30 respectively.[4] Yet, even assuming these employees were recipients of higher compensation, plaintiff has failed to proffer any evidence showing that she was similarly situated with Toensfeldt, Leslie and Cardinal. On the other hand, defendant has introduced ample evidence showing that objective, structured evaluation criteria were applied in setting wages for some male line cooks and that the males earning a higher rate of pay were distinguishable from plaintiff. Even plaintiff conceded at her deposition that one employee, Toensfeldt was distinguishable in that he had greater job responsibility than her, had prior restaurant experience, and demonstrated exemplary performance. Undeniably, plaintiff has not established a prima facie case with respect to the issue of dis-

---

**4.** At plaintiff's deposition, she only cited one employee, Paul Toensfeldt, as earning a higher wage.

criminatory pay because she has failed to create a genuine issue of material fact as to whether she was similarly situated to those with whom she compares herself.

### c. Plaintiff Has Not Established a Prima Facie Discriminatory Discharge Case

■ In the same vein, defendant contends that plaintiff has not established a prima facie case of discriminatory discharge. The gravamen of plaintiff's third claim is that she was discharged for no other reason than her sex. The undisputed facts show that plaintiff was not terminated due to her gender, but as a result of repeated insubordination and poor performance. For example, a written performance counselling completed by plaintiff's supervisor, Nichols, indicates that he terminated plaintiff due to "insubordination and poor job performance." The performance counselling states, in pertinent part, that plaintiff "punched out and left without management approval or permission, in direct violation of management's prior directive." It also explains that plaintiff's "work station was left in a totally unsatisfactory condition." Furthermore, plaintiff admitted in her deposition that she agreed to work until close, but clocked out of the restaurant prior to close without management approval on August 30, 1993. She also testified that she understood the meaning of working until "close" and knew that if she agreed to close and did not close that she "ran the risk of being terminated." All plaintiff offers with respect to this claim are general denials and conculsory allegations. Illustrative is her brief in which she merely "denie[s] that she was insubordinate and denie[s] that she [did] anything wrong." Such naked conclusory statements and general denials are insufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990) (holding that "conclusory allegations [were] not sufficient to withstand a motion for summary judgment" in an employment discrimination case). Based upon the unrefuted evidence, this court finds no genuine issue of material fact as to whether plaintiff was fired as a result of sex discrimination. This court holds that plaintiff was discharged due to her insubordination and incompetence.

Since this court finds that plaintiff was fired for insubordination, this court also finds that plaintiff has not established the second element of a prima facie case, i.e. that she was performing her job to the employer's satisfaction. *Thomas,* 910 F.Supp. at 1286. Summary judgment must be entered for defendant on this claim.

■ Assuming arguendo that plaintiff had established the second element of a prima facie disparate treatment case, she most certainly has not established the fourth element, to wit: other male employees similarly situated were treated differently. In support of this claim, plaintiff alleges that one male employee in particular, John Jones, was treated differently because he received a total of *three* warnings (two written warnings and one verbal warning) for leaving early without permission before he finally was terminated for such action. Plaintiff contends that she was fired the *first* time she punched out without approval and without completing her assignments.

· While it is true that plaintiff had not previously been admonished for leaving a shift early, what plaintiff fails to mention is that she was disciplined five times for other reasons and warned that future insubordination would be grounds for immediate termination. Therefore, this court finds that plaintiff was not similarly situated to Jones. Because plaintiff has failed to prove she was similarly situated to other line cooks whom she deems comparable, namely Jones, plaintiff's claim must be dismissed.

### 2. Plaintiff Has Not Met Her Ultimate Burden of Proving Pretext

■ Assuming arguendo that plaintiff had satisfied her *initial* burden of establishing a prima facie case, summary judgment nevertheless must be entered in favor of defendant on all plaintiff's claims because defendant has not met her *ultimate* burden under the McDonnell–Douglas framework of showing that defendant's articulated reasons for its actions are pretextual. Under the framework, if plaintiff meets her threshold burden, then the employer must "explain[ ] what he has done" or "produce evidence of

legitimate nondiscriminatory reasons" for his action. The defendant is not required to prove the absence of a discriminatory motive, *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), but rather need only "introduce evidence, which if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, at 509, 113 S.Ct. at 2748. After the employer has met the burden of proving a nondiscriminatory, legitimate reason, then the plaintiff bears the ultimate burden of proving that he or she was the victim of intentional discrimination. *Hicks*, at 510–11, 113 S.Ct. at 2749 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). To do so, plaintiff must establish that the reason furnished by the defendant was false *and* that intentional discrimination was the true reason driving the employer's actions. *Id.* at 510–11, 113 S.Ct. at 2749. *Transou v. Electronic Data Syst.*, 767 F.Supp. 1392, 1401 (E.D.Mich.1991), *aff'd.* 986 F.2d 1422 (6th Cir.1993).

■ With regard to plaintiff's claim of discriminatory hours, defendant has articulated a legitimate nondiscriminatory reason for scheduling plaintiff on the dinner-business decline shift, which generally yields less hours. Specifically, defendant asserts that plaintiff was assigned the dinner-business decline shift because she preferred to work the shift, was available to work that shift and because she never informed management of her alleged desire to work any other shift. These reasons stand wholly unrefuted. Concerning plaintiff's wage claim, defendant has shown that wage rates were based solely on merit, job knowledge and skills. Plaintiff has not challenged this assertion. And, with respect to plaintiff's discharge claim, defendant declares that plaintiff was terminated due to insubordination and continued poor performance, not gender. This reason, likewise, remains unrebutted. In sum, since plaintiff has neither shown that defendant's reasons were false nor that intentional discrimination was the true reason for defendant's actions, all three of plaintiff's claims fail.

### D. Statute of Limitations

Defendant also asserts that two of plaintiffs claims, her wages and hours claims, are time-barred. It is not necessary for this court to address the issue of whether plaintiff's claims are barred by the relevant statute of limitations since this court finds that these two claims fail on other grounds.

For all the foregoing reasons, defendant's motion for summary judgment must be granted, and plaintiff's case dismissed with prejudice.

### ORDER

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment be and is hereby GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's complaint be dismissed with prejudice.

**SO ORDERED.**

### JUDGMENT

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered.

It is **ORDERED** and **ADJUDGED** that with respect to any claims against defendant, G.M.R.I., Inc., plaintiff takes nothing, and that those claims be dismissed on the merits.

It is further **ORDERED** that the clerk serve a copy of the judgment by United States mail on the counsel for plaintiffs and on counsel for defendants.