Susan L. HOSKINS, Plaintiff,

v.

**OAKLAND COUNTY SHERIFF'S DEPARTMENT and The County of Oakland, Defendants.**

No. Civ. 98–40213.

United States District Court,
E.D. Michigan,
Southern Division.

March 26, 1999.

Joseph C. Bird, Jeffrey J. Fleury, Stark, Reagan, Troy, MI, for Susan L. Hoskins, plaintiff.

Steven M. Potter, Rick J. Patterson, Potter, Carniak, Auburn Hills, MI, for, defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

The above-entitled case commenced June 16, 1998 with the filing of plaintiff Susan L. Hoskins's two-count complaint. Plaintiff alleges disability discrimination pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101 *et seq.,* as well as gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The instant suit was filed after defendants Oakland County Sheriff's Department and Oakland County terminated plaintiff's employment following a non-work related injury. On January 15, 1999, defendants filed a motion for summary judgment. Plaintiff filed her response on February 5, 1999. A reply brief was submitted by defendants on February 17, 1999. Oral argument on defendants' motion for summary judgment was heard on March 10, 1999.

For the reasons set forth below, the Court will grant defendants' motion for summary judgment.

## I. Factual Background

In 1979, plaintiff Hoskins began working at the Oakland County Sheriff's Department as a dispatcher. In 1982, she was promoted to Deputy I after successfully passing the test required for that position. Plaintiff was originally placed in the Women's Division of the Oakland County jail where she received on the job training with respect to security and controlling of inmates. Plaintiff never attended a police academy nor was she ever given a strength test or graded on her ability to grapple with inmates.

In 1987, plaintiff was assigned to Oakland County Circuit Court detention. Her duties included transporting prisoners from the jail through a tunnel to various courtrooms at Oakland County Circuit Court. In 1993, plaintiff was assigned to Novi District Court. Plaintiff's duties there included transporting inmates and pretrial detainees. It is undisputed that in this capacity plaintiff had contact with inmates on a daily basis. Moreover, at plaintiff's deposition, she admitted that the potential existed for physical confrontation on a daily basis. Plaintiff further testified that "in my 18 years [of employment] I have only had one altercation [with a detainee], and that was with three other officers at the same time." Depo. of Susan L. Hoskins, p. 24, attached as Exh. A to Defendants' Brief in Support of Motion for Summary Judgment.

On August 25, 1996, plaintiff suffered non-work related injuries when a horse fell on her. Dr., E. Patrick Mitchell, D.O. treated plaintiff and described her injuries as "a superior and inferior pudic rami fracture which were non-displaced and stable ... [with] bilateral clavicle fractures ... [and] sternal clavicular disarticulation." Depo. of E. Patrick Mitchell, p. 23, attached as Exh. A to Defendants' Brief in Support of Motion for Summary Judgment. In layman's terms, the clavicle where it connects to the breast bone was separated and "pushed back and in." *Id.* at pp. 23–24. Despite the seriousness of plaintiff's injuries, she was never treated with surgery. According to Dr. Mitchell, the injuries resulted in a limitation on plaintiff's range of motion and upper body strength, as well as "discomfort mostly

associated with arthritis ... developing in [the] affected joints." *Id.*

Following plaintiff's injuries, she obtained two letters authorizing restrictions on her activities, one from her treating physician Dr. Mitchell and the other from Dr. William Bria of the Briarwood Medical Group, University of Michigan Hospitals. Dr. Bria's July 11, 1997 letter states that plaintiff "is able to return to work, however, she should not be lifting or engaging in any activity that would jar her chest such as shooting a shotgun or getting into a situation in which she could get hit in the chest." Exh. C to Defendants' Brief in Support of Motion for Summary Judgment. The July 11, 1997 letter also contains a "disability certificate" dated July 18, 1997 appearing in the lower right corner. The certificate is signed by Dr. Mitchell and states that plaintiff has sufficiently recovered to return to work, but nevertheless is prohibited from engaging in "work that will impact her anterior chest or shoulders." *Id.*

Plaintiff also obtained a letter from Dr. Mitchell dated September 29, 1997. Exh. D to Defendants' Brief in Support of Motion for Summary Judgment. That letter more specifically describes her injuries and states that plaintiff has been evaluated by both the pulmonary and thoracic surgery, departments of the University of Michigan hospitals. Dr. Mitchell writes that Ms. Hoskins is not on medication, has restrictions on lifting, pushing or pulling over 20 pounds, as well as being restricted from using a shotgun and restraining of inmates. *Id.* Although Dr. Mitchell makes clear that plaintiff "still experiences pain and decreased range of motion ... her motivation and rehabilitation potential is excellent." *Id.* Dr. Mitchell concludes:

> I do not believe that Susan will ever be able to resume full duty as a Deputy with Oakland County Sheriff's Department. She will probably need permanent restrictions of certain activities which would be considered duties of a Deputy Sheriff.

*Id.*

Plaintiff submitted both letters to Carol VanLeuvan, an employee records specialist of defendant Oakland County. Plaintiff was informed that she would not be able to return to work in a restricted, light-duty capacity because no light-duty positions were available. Depo. of Susan L. Hoskins, p. 70, attached as Exh. A to Defendants' Brief in Support of Motion for Summary Judgment. At her deposition, plaintiff testified that she knew of other female and male Deputy I employees who also were not allowed to return to work with restrictions due to the unavailability of light-duty positions. *See* Depo. of Susan L. Hoskins, p. 72, attached as Exh. A to Defendants' Brief in Support of Motion. The next communication from Oakland County Sheriff's Department received by plaintiff was a letter indicating that a pre-termination hearing was to be held regarding her separation from the department.

On November 7, 1997 a pre-termination hearing was conducted. See Transcript of Hearing, attached as Exh. E to Defendants' Brief in Support of Motion for Summary Judgment. Major Thomas Quisenberry, Chief of Staff, represented the sheriff's department. Quisenberry stated that the termination was based on the restrictions set forth in Dr. Mitchell's September 29, 1997 letter and also upon the language in that letter indicating that the restrictions were permanent in nature. Exh. E to Defendants' Brief in Support of Motion for Summary Judgment. Quisenberry next explained that the restrictions impacted plaintiff's *primary duties* because "the Deputy I's primary job description is working with inmates...." *Id.* Quisenberry pointed out that the only place a Deputy I could avoid all contact with inmates would be if she were locked in a control booth in the master control area. *Id.*

During the hearing, plaintiff was explicitly asked whether there were "any jobs within the Sheriff's Department that [she was] able to perform other than Deputy Sheriff." *Id.* Plaintiff responded, "No. Well probably with training. . . ." A discussion ensued, in which plaintiff was asked about the possibility of taking a job as a dispatcher, a position she had held previously. Plaintiff rejected placement as a dispatcher and also as a booking clerk. Thereafter, she was asked again, "Are there any other jobs within the Sheriff's Department that you would be interested in, that you are able to perform?" Plaintiff responded, "No." Next, a discussion was entered into regarding locating plaintiff a desirable job with Oakland County. Plaintiff was uncertain as to which jobs were available, and therefore could not identify a specific job. *Id.*

Plaintiff at her deposition was asked to describe her condition as a result of the accident. She testified that "[m]y chest is permanently pulled apart." *See* Depo. of Susan L. Hoskins, p. 62, attached as Exh. A to Plaintiff's Brief in Response to Plaintiff's Motion. Plaintiff stated that she has trouble lifting heavy things, but also remarked, "I attempt everything." *Id.* Plaintiff's husband, Ronald Hoskins, testified that when his wife tries to lift heavy items, she stops and "she just says I can't do it." *See* Depo. of Ronald Hoskins, p. 18, attached as Exh. C to Plaintiff's Brief in Response to Plaintiff's Motion. When queried as to whether plaintiff stops because of pain or because of lack of physical strength, he responded that he did not know. Plaintiff also testified that

> I have problems still with my chest . . . it will never heal from what I've been told.
>
> \* \* \* \* \* \*
>
> I have to be careful the way I move at times. It hurts to cough, sneeze, if I breathe the wrong way. But I learned

> to just kind of ignore it . . . I just be careful with the way I do things.
>
> \* \* \* \* \* \*
>
> . . . at times a couple of weeks ago I grabbed laundry and for some reason something that I did pulled and that hurt.

Depo. of Susan L. Hoskins, pp. 138–39, attached as Exh. A to Plaintiff's Brief in Response to Plaintiff's Motion.

Following the termination hearing, defendants refused to allow plaintiff to come back to work as a Deputy I. In an effort to pursue a different career, she attended classes and has recently graduated from Oakland Community College, earning a degree in accounting.

## II. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Brad-*

ley Co., 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*,

> [t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

Plaintiff brings two claims against defendants arising out of her termination as a Deputy I with the Oakland County Sheriff's Department. First, plaintiff maintains that the termination violated the Americans with Disability Act of 1990(ADA), 42 U.S.C.A. § 12101 *et seq.* Second, she argues that her rights were violated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Each of these claims will be discussed below *seriatim.*

### A. Plaintiff's Claim of Disability Discrimination under the Americans with Disability Act, 42 U.S.C.A. § 12101 *et seq.*

The Americans with Disability Act (ADA) prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). The Act specifically delineates which phases in the employment process are protected: "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*

■ In order to establish a prima facie case under the ADA, a plaintiff must show: "(1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability." *See Gilday v. Mecosta County*, 124 F.3d 760, 761 (6th Cir.1997) (quoting *McKay v. Toyota Motor Mfg., U.S.A.*, 110 F.3d 369, 371 (6th Cir.1997) (internal quotation marks omitted). In addition, courts have required a fourth element, i.e., that plaintiff show that "a non-disabled person replaced her or was selected for the position that the disabled person had sought." *See Kocsis v. Multi–Care Management*, 97 F.3d 876, 882 (6th Cir. 1996) (citing *Maddox v. University of Tennessee*, 62 F.3d 843, 846 (6th Cir.1995).

In ADA cases, the Sixth Circuit has endorsed the application of the same kind of burden-shifting analysis found in cases brought under Title VII of the Civil Rights Act of 1964. *See Kocsis*, 97 F.3d at 882 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); *see also Newman v. GHS Osteopathic*, 60 F.3d 153, 156–57 (3d Cir.1995) (collecting cases holding that Title VII analysis applies to ADA claims). "If the plaintiff establishes the elements for a prima facie case, the burden then

shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action it took against the plaintiff." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). "If the defendant carries that burden of production, plaintiff must then prove 'by a preponderance of the evidence' that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)).

### 1. Whether plaintiff's condition constitutes a "disability" within the meaning of the ADA, 42 U.S.C.A. § 12102(2).

The first element of plaintiff's prima facie case concerns whether she is a "disabled" person as that term is defined in the ADA. *See* 42 U.S.C. § 12102. The Act provides the following definition of the term "disability":

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Further guidance is found in the Code of Federal Regulations, 29 C.F.R. § 1630.2, which provides, in pertinent part, that

[m]ajor life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

\*\*\*

[t]he term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular

major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Moreover, the federal regulations set forth the following factors to be considered in determining whether an individual is substantially limited from engaging in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

(3) With respect to the major life activity of working-

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(2) & (3).

■ Defendants argue that plaintiff does not qualify as "disabled" under the ADA because her medical condition as a result of the horse falling on her does not "substantially limit" plaintiff from engaging in a major life activity. Although plaintiff testified that "her chest was permanently pulled apart" and that she has trouble lifting heavy things because it is painful, defendants point out that she also stated that she "attempts everything." See Depo. of Susan L. Hoskins, p. 62, attached as Exh. A to Defendants' Brief in Support of Motion for Summary Judgment. In addition, defendants maintains that plaintiff is "not physically different in

any other way as a result of the accident." See Defendants' Brief in Support of Motion, p. 5.

Defendants rely upon *Kocsis v. Multi-Care Management*, 97 F.3d 876 (6th Cir. 1996), wherein the plaintiff had testified at her deposition that none of her impairments, which included multiple sclerosis and arthritis, limited her activity in any way. *Id.* at 884. In *Kocsis*, the Sixth Circuit acknowledged that multiple sclerosis and arthritis "can be disabling in some instances, [but]' they were not so substantially limiting in this case." *Id.* The appellate court ultimately affirmed the lower court's decision granting defendant's motion for summary judgment. *Id.* at 887.

Defendants also directly attack any claim by plaintiff that she is substantially impaired from performing the major life activity of working. Defendants point to case law holding that where a plaintiff alleges an impairment which substantially limits the major life activity of working, the impairment must significantly restrict plaintiff from performing " 'either a class of jobs or a broad range of jobs in various classes.'" *McKay v. Toyota Motor Mfg., U.S.A.*, 110 F.3d 369, 372 (6th Cir.1997) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). According to defendants, plaintiff's impairment merely disqualifies her from doing a single job, i.e., acting as a Deputy I with its attendant duties including the restraining of inmates. As defendants point out, plaintiff is able to perform other jobs within the Oakland County Sheriff's Department, was offered two such positions, but ultimately refused these jobs because of their lower wages. *See* Depo. of Susan L. Hoskins, pp. 47 & 50, attached as Exh. A to Defendants' Brief in Support of Motion for Summary Judgment.

In support of their position, defendants cite *Jasany v. United States Postal Svc.*, 755 F.2d 1244 (6th Cir.1985). In *Jasany*, plaintiff was a post-office employee who asserted that he was discriminated against due to a physical handicap, strabismus, commonly known as crossed eyes. Plaintiff's condition, however, only had an impact on his duties as an operator of a mail sorting machine and did not otherwise limit his duties as a postal employee. *Id.* at 1247. In finding that plaintiff had not satisfied the threshold requirement under the ADA of showing that he was "disabled," the court noted that "an impairment that interfere[s] with an individual's duty to do a particular job, but [does] not significantly decrease that individual's ability to obtain [other employment], was not substantially limiting within the meaning of the statute." *Id.* at 1248 (citing *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D.Haw.1980)); *see also Salt Lake City Corp. v. Confer*, 674 P.2d 632, 636–37 (Utah 1983) (holding that "one particular job for one particular employee cannot be a 'major life activity' "). The court also remarked that "[a]n impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." *Id.* at 1249 n. 3.

Defendants also cite *Welsh v. City of Tulsa*, 977 F.2d 1415, 1417 (10th Cir.1992), wherein the Tenth Circuit rejected plaintiff's disability discrimination claim based on decreased sensation in two fingers. Plaintiff argued that he met the definition of "disabled" because he was perceived by the City of Tulsa as having an impairment that substantially limited his ability to work as a firefighter. *Id.* at 1417. The court disagreed, holding that the " '[t]he statutory language, requiring a substantial limitation of a major life activity, emphasizes that the impairment must be a significant one.'" *Id.* (quoting *Forrisi v. Bowen*, 794 F.2d 931, 933–34 (4th Cir.1986). Moreover, the court stated that although "the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice." *Welsh*, 977 F.2d at 1417; *see also Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992) (alleged sensitivity to chemicals that prevented plaintiff from performing only lab work but did not substantially

limit employment as a whole held not to be a handicap); *Daley v. Koch,* 892 F.2d 212, 214–16 (2d Cir.1989) (personality traits of poor judgment, irresponsible behavior, and poor impulse control held not to substantially limit major life activities where they were perceived as disqualifying employee from only position of police officer); *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328, 1343 (S.D.Tex.1987) (while employee's knee problem constituted an impairment, it did not substantially limit his major life activities in that it only limited his ability to work at jobs requiring pole climbing), aff'd, 863 F.2d 881 (5th Cir.1988); *Tudyman v. United Airlines,* 608 F.Supp. 739, 746 (being overweight does not substantially limit major life activity where it disqualified employee from only one position); *Cook v. State of R.I., Dep't of Mental Health, Retardation & Hosps.,* 783 F.Supp. 1569, 1574 (D.R.I. 1992) (person not deemed handicapped simply because he or she is "unable to perform one particular type of job requiring specific physical characteristics or skills").

In response, plaintiff alleges that not only does her condition substantially impair one or more major life activities, but that she meets *all three* of the alternative definitions for "disability" under the ADA. *See* 42 U.S.C. § 12102(2). First, plaintiff contends that her physical activities are restricted in numerous ways. Second, plaintiff points to her record of physical

impairment. Third, plaintiff maintains that she is regarded by defendants as having such an impairment. *See* Plaintiff's Brief in Opposition to Defendants' Motion, p. 11 n. 1 (citing the testimony of a clerical employee, Carol VanLeuven, that VanLeuven had met regularly with plaintiff regarding her disability and had acknowledged that she had suffered a severe injury).

Citing deposition testimony, plaintiff emphasizes that her chest is "permanently pulled apart," in an attempt to rebut defendants' claim that she is "not physically different" in any other way as a result of the accident. In addition, this condition allegedly causes her daily pain, difficulty in lifting, and precludes swimming. Plaintiff points to her deposition testimony wherein she stated that "I have to be careful the way I move at times. It hurts to cough, sneeze, if I breathe the wrong way." Depo. of Susan L. Hoskins, pp. 138–39, attached as Exh. A to Plaintiff's Brief in Response to Plaintiff's Motion.

With respect to the first alternative definition of "disability," this Court finds that although plaintiff has shown that she does suffer from a physical impairment as a result of the horse falling on her, plaintiff has nonetheless failed to establish that her condition "substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2). Plaintiff has simply not demonstrated any major life activity which has been significantly impacted.[1] Plaintiff's

---

1. With respect to plaintiff's claim that she has difficulty lifting heavy objects, courts have held that such a restriction is not tantamount to a substantial limitation of a major life activity. *See Thompson v. Holy Family Hosp.,* 121 F.3d 537 (9th Cir.1997) (holding that employee's inability to lift more than 25 pounds on continuous basis, more than 50 pounds twice a day, or more than 100 pounds once a day did not substantially limit her ability to engage in major life activities of lifting and working; employee failed to show that her cervical injury curtailed her general ability to engage in major life activity of working; and employer did not regard employee as disabled). As the Ninth Circuit explained in *Thompson,*

[i]n assessing whether [plaintiff] is so limited, we are in territory well-charted by our colleagues in other circuits. A number of courts have held that lifting restrictions similar to [plaintiff's] are not substantially limiting, and we agree. See *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (declaring, as a matter of law, that a 25–pound lifting limitation "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"), cert. denied, 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). *see also Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996) (holding that a 25–pound lifting restriction did not substan-

*own deposition testimony* supports this conclusion. Although plaintiff did testify that it hurts when she coughs, sneezes or breathes the wrong way, she further stated, "[b]ut I learned to just kind of ignore it ... I just be careful with the way I do things." Depo. of Susan L. Hoskins, pp. 138–39, attached as Exh. A to Plaintiff's Brief in Response to Plaintiff's Motion. In addition, the following colloquy from plaintiff's deposition is especially significant:

Q: Would it be a fair statement that you have learned some behavior that allows you to avoid discomfort [in the chest area] *by avoiding certain activities?*

A: *No, not avoiding certain activities.*

Q: Just the way you do them?

A: Yes. A little bit more careful.

Id. at 140 (emphasis added).

At the hearing held March 10 1999, plaintiff cited *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), in an attempt to support her position that she meets the definition of "disabled" as found in the ADA. Specifically, it was argued that plaintiff is "disabled" because she experienced difficulty in engaging in sexual intercourse. Plaintiff's counsel admitted that plaintiff is able to engage in such activity, but argued that now she must utilize a different position than the one she and her husband had utilized before the accident. Counsel made clear that this point had not been asserted at plaintiff's deposition, was not supported by the record, and was being raised for the first time at oral argument.

In *Bragdon,* the Supreme Court considered whether the human immunodeficiency virus (HIV) is a "physical impairment" within meaning of the ADA. In that case, plaintiff brought an action under the ADA against a dentist who had refused to treat her in his office.[2] The Court concluded that "[o]ur evaluation of the medical evidence leads us to conclude that [plaintiff's] infection substantially limited her ability to reproduce...." *Bragdon,* 118 S.Ct. at 2206. In reaching this conclusion, the Court reasoned that "a woman infected with HIV who tries to conceive a child imposes on the man a significant risk of becoming infected." *Id.* In addition, "an infected woman risks infecting her child during gestation and childbirth, i.e., perinatal transmission." *Id.*

It is apparent from the above that *Bragdon* is readily distinguishable from the case at bar. The Supreme Court's ruling in *Bragdon* does not stand for the proposition that a change in position during sexual relations constitutes an impairment which "substantially limits a major life activity." Rather, the Court based its decision on the manifest impact on reproduction which a person infected with HIV must necessarily face. Plaintiff Hoskins, in the instant case, has not shown such a significant impact, if any at all, on her reproductive capabilities. Nor has she substantiated her claim of sexual difficulties with any documentation or testimony.

Furthermore, the Court is in agreement with defendants that plaintiff has failed to show a substantial limitation with respect to the major life activity of working. As

tially limit any major life activities); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir. 1996) (concluding, where a plaintiff could lift and reach as long as he avoided heavy lifting, that he was not substantially impaired).

2. Plaintiff brought suit under that portion of the ADA dealing with equal access to public accommodations, and not under the portion of the ADA having to do with employment discrimination. *See* 42 U.S.C. § 12182. Section 302 of the ADA provides that

[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who ... operates a place of public accommodation.

42 U.S.C. § 12182(a). Unlike the plaintiff in the instant case, the plaintiff in Bragdon was not an employee of defendant.

demonstrated in Jasany, Welsh and related cases, the major life activity of working may not serve as a basis for a disability claim under the ADA if plaintiff merely shows that her impairment limits her from performing only a narrow range of jobs. See *Jasany*, 755 F.2d at 1249 n. 3. Moreover, as the *Welsh* court remarked, although "the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice." *Welsh*, 977 F.2d at 1417.

As to the second alternative definition, plaintiff has likewise failed to show that she is disabled under the ADA due to a record of physical impairment substantially limiting a major life activity. Although, as mentioned above, plaintiff has presented the Court with a record of a physical impairment caused by her accident, plaintiff has *not* shown a record supporting her claim that her condition substantially limits a major life activity. In addition, under the third alternative definition, plaintiff has failed to demonstrate that she is regarded as having such a significant impairment. It is not enough to show that defendants regarded her as "severely injured" or "impaired" or even "disabled," in the colloquial sense. Clearly, plaintiff was so regarded by her employer, as evidenced by their issuance of disability benefits. However, something more is required under the ADA, i.e., that plaintiff show that she was regarded as having a disability substantially limiting one or more major life activities. It is apparent that plaintiff was *not* so regarded by her employer because plaintiff was offered other positions within the department which she ultimately refused.

In light of the foregoing considerations, this Court finds that defendants have succeeded in satisfying their burden of demonstrating that no genuine issue of materi-

al fact exists with respect to whether plaintiff's condition constitutes a disability within the meaning of the ADA, 42 U.S.C.A. § 12102(2). Plaintiff has failed to raise a genuine issue with respect to this threshold requirement.

Although this Court has found that plaintiff has failed to satisfy the first element of her prima facie case under the ADA, assuming arguendo that plaintiff were able to satisfy the threshold definition of "disability," the Court will next address whether plaintiff is able to meet the second element of her prima facie case.[3]

## 2. Whether plaintiff in qualified to perform the essential functions of her job with or without reasonable accommodation.

The second element of plaintiff's prima facie case under the ADA is that she be qualified to perform the essential functions of her job with or without reasonable accommodation. Plaintiff alleges that the ability to restrain inmates—an ability plaintiff now clearly lacks—is not an essential function of the Deputy I position. Defendants strenuously argue otherwise, maintaining that plaintiff has utterly failed to satisfy this second element of her prima facie case. At the outset, it must be noted that the burden is shifted to defendants to demonstrate that the ability to restrain inmates is an "essential function." *See Hamlin v. Charter Township of Flint*, 165 F.3d 426, 430 (6th Cir.1999) (citing *Monette v. Electronic Data Systems Corporation*, 90 F.3d 1173 (6th Cir.1996) (holding that once plaintiff contends that a particular job requirement is unessential, burden shifts to defendant-employer to prove challenged requirement is necessary)).

---

**3.** There is no question that plaintiff is able to satisfy the third element of her claim under the ADA: that she suffered an adverse employment decision due to her disability. *See Gilday v. Mecosta County*, 124 F.3d 760, 761 (6th Cir.1997). In addition, the Court will assume that plaintiff is able to meet the fourth element, i.e., that plaintiff show that "a non-disabled person replaced her or was selected for the position that the disabled person had sought." *See Kocsis v. Multi–Care Management*, 97 F.3d 876, 882 (6th Cir.1996).

The ADA itself provides guidance in determining those aspects of a job which are deemed essential:

consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8); *see also Pikora v. Blue Cross & Blue Shield of Michigan*, 970 F.Supp. 591, 595 (E.D.Mich.1997). The federal regulations define "essential functions" as follows:

(n) Essential functions—

(1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

(i) The function may be essential because the reason the position exists is to perform that function;

(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n).

Defendants argue that plaintiff is incapable of performing her regular job duties as a Deputy I and can offer no reasonable accommodation, and thus is not otherwise qualified to recover under the ADA. *See Pikora*, 970 F.Supp. at 596. Defendants have submitted the actual job description for the Deputy I position at the Oakland County Sheriff's Department. *See* Exh. G to Defendants' Brief in Support of Motion. As that document shows, typical duties within the corrections area include transporting inmates, maintaining and enforcing security, supervising inmates, searching inmates, enforcing jail procedures, inspecting inmates' cells, overseeing distribution of inmate meals, linens and supplies, performing inmate clothing exchanges, and screening inmates.

In addition, defendants proffer the deposition testimony of Major Quisenberry, Chief of Staff. *See* Exh. F to Defendants' Brief in Support of Motion. He expressed his opinion that the restraining of inmates is a "fundamental part" of the Deputy I position:

The deputy one position is the deputy that's the entry level position, and it's the one person who has the closest individual contact with prisoners or inmates in the Oakland County Jail. They're the first ... line-of-defense ... with the prisoner, whether it be from the time they get up in the morning with their feedings until they go to bed at night. It's generally the deputy ones who have the day-to-day contact with prisoners. And the opportunity and at times the

necessity that they have to have physical contact with those inmates I think falls within this [ability to] physically restrain individuals....

*Id.* at p. 52.

In response, plaintiff argues that "restraint" in the context. of the Deputy I position typically involves manipulating handcuffs or leg chains and not fighting or grappling with inmates. *See* Exh. I to Plaintiff's Brief in Response to Motion, pp. 48 & 53. Plaintiff alleges that she is able to perform these types of functions and has never been restricted from doing so. Specifically, plaintiff maintains that a genuine issue of material fact exists as to whether "restraining of inmates," as defined by defendants, is in actuality an essential function of the Deputy I position. Plaintiff points out that no strength or restraint test is ever required of Deputy I officers, even at the time of hiring. Moreover, plaintiff points out that in her 17-year career she has been involved in only one altercation, and in that situation she was assisted by other officers.

Plaintiff attempts to analogize her case to *Hamlin v. Charter Township of Flint,* 165 F.3d 426, 430 (6th Cir.1999). In *Hamlin,* a former assistant fire chief sued his prior employer for disability discrimination under the ADA and under the Michigan Handicapper's Civil Rights Act (MHCRA). Following a heart attack and after obtaining authorization from his cardiologist, plaintiff returned to work but was advised to avoid strenuous physical activities such as front-line firefighting. *Id.* at 428. After serving without incident for 17 months, the new fire chief terminated plaintiff's employment because of a "physical inability to engage in the strenuous duties of a firefighter." *Id.* The Sixth Circuit held that because "Hamlin [had] submitted proof that he could perform the duties of the Assistant Fire Chief, as long as those duties did not involve firefighting ... [his] evidence was sufficient to raise a genuine issue as to whether firefighting is an essential function of the position." The

*Hamlin* court, relying upon 29 C.F.R. § 1630.2(r), concluded that " '[a]n employer ... is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. The risk can only be considered when it poses a significant risk, i.e., high probability of substantial harm; a speculative or remote risk is ' " *Id.* at 432 (quoting 29 C.F.R. § 1630.2(r)).

Defendants, on the other hand, maintain that they are furthermore not obligated to accommodate plaintiff by placing her in a locked security booth. Security booth assignments, according to defendants, are relief positions and are available only on a temporary basis. Defendants argue that under the ADA employers are not obligated to convert a temporary job into a permanent position. *See Nguyen v. IBP, Inc.,* 905 F.Supp. 1471, 1486 (D.Kan.1995) (citing *Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994)). In any event, according to defendants, deputies in such positions may be called upon to restrain inmates and to assist other deputies in emergency situations.

Applying the standard for evaluating summary judgment motions contained in the federal rules, viewing all the evidence in a light most favorable to the nonmovant, and drawing all reasonable inferences in the nonmovant's favor, this Court finds that defendants have met their burden of demonstrating that there is no genuine issue of material fact as to whether physical restraint of inmates is an essential function of the Deputy I position. Plaintiff likewise has failed to raise a genuine factual dispute with respect to this issue. The Deputy I position requires *daily* contact with inmates, as demonstrated by the position's job description and the overwhelming evidence submitted by defendants. Plaintiff's argument that restraining of inmates is not an essential function of employment as a deputy stationed in a jail is untenable and unreasonable.

Furthermore, this case presents a factual scenario distinguishable from the one

found in *Hamlin*. In that case, as discussed above, the plaintiff was an assistant chief who exercised a supervisory role and there existed a genuine issue of fact as to whether front-line firefighting could be considered an "essential function" of such a position. However, in the instant case, plaintiff Hoskins exercises no supervisory or other role which would serve to distance her from "front-line" action. To the contrary, defendants have submitted credible evidence that plaintiff's duties require close contact with inmates. Nor is the risk posed by plaintiff's condition "a slightly increased risk," but rather a significant one because there is a high probability that substantial harm would result to both plaintiff and to other officers if plaintiff were required to restrain an inmate and was injured as a result.

■ With respect to accommodating plaintiff by placing her in a locked security booth, this Court agrees that defendants had no such duty. It is well-settled that the ADA does not require employers to create a new, permanent position in place of an otherwise temporary position. *See Staub v. Boeing*, 919 F.Supp. 366 (W.D.Wash.1996); *see also Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1486 (D.Kan.1995); *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994). In addition, it should be emphasized that defendants offered plaintiff two other positions within the department which would not involve her performing the essential function of restraining inmates. As previously mentioned, plaintiff rejected these positions.

At the hearing, defendants relied upon *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir.1998), in support of their position that the ADA does *not* require employers to accommodate allegedly disabled employees by converting existing light-duty temporary positions into permanent positions. In that case, employees of a meatpacking plant brought suit alleging that defendant had engaged in the practice of laying off and terminating employees because of their disabilities in violation of ADA. The Seventh Circuit ultimately held that there existed genuine issues of material fact relating to whether the employer had properly implemented its policy of reserving light-duty positions for employees with temporary medical restrictions. However, in reaching this decision the appellate court was careful to note that the "'ADA does not compel an employer to reduce the number of bona fide temporary jobs it has set aside ... and to convert them to permanent positions for its disabled employees.'" *Id.* at 697 (quoting *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 680 (7th Cir.1998)). The court further commented that "'the ADA does require that [the employer] make its light-duty program available to disabled employees who are *recuperating from temporary restrictions and are otherwise qualified to participate.*'" *Id.* (emphasis added).

In light of the above, it is clear that *Hendricks–Robinson* stands for the proposition that the ADA does *not* require employers to accommodate allegedly disabled employees by converting existing light-duty temporary positions into permanent positions. In the present case, defendants argue that although there existed a "relief" position located in the locked control booth, defendants were under no duty to transform such a temporary position into a permanent one. The Court agrees. It should be noted that the instant case might very well be decided differently if plaintiff was "recuperating from temporary restrictions" and was "otherwise qualified to participate." However, as the record shows, plaintiff's medical restrictions barring her from the restraining of inmates are not temporary in duration and she is not "otherwise qualified" to perform the duties of a Deputy I.

**B. Plaintiff's Claim of Gender Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***

Plaintiff also brings a claim of gender discrimination pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Such claims are analyzed in accordance with the framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 526, 113 S.Ct. 2742, 2757, 125 L.Ed.2d 407 (1993). First, plaintiff has the burden of proving by the preponderance of evidence a prima facie case of discrimination. *See Terwilliger v. GMRI, Inc.,* 952 F.Supp. 1224, 1227 (E.D.Mich. 1997) (Gadola, J.). Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id.* Third, should defendant carry this burden, plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*

Before the *McDonnell Douglas* burden-shifting analysis is applied, however, plaintiff must overcome her initial burden of establishing a prima facie case of gender discrimination. To establish such a prima facie case under Title VII, plaintiff must show that "(1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position she lost, and (4) she was replaced by someone outside the protected class." *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir.1996). In place of the fourth element, plaintiff may succeed in making out her prima facie case if she is able to show, in addition to the first three elements, that "'a comparable non-protected person was treated better.'" *Id.* (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992)).

. Plaintiff maintains that she is able to make out a prima facie claim of sex discrimination because (1) as a woman she qualifies as a member of a protected class, (2) she was terminated by defendants, (3) her performance was exemplary, and (4) she has identified male deputies who were provided the opportunity to work in light-duty deputy positions following disabling injuries, while she was not. Plaintiff's argument focuses on the fourth element, alleging that the male deputies identified by plaintiff were unable to perform the essential functions associated with being a deputy, but were nevertheless accommodated by defendants.[4] According to plaintiff, this indication of "disparate treatment" is sufficient to avoid summary judgment.

Defendants argue that plaintiff has not established a prima facie case. Specifically, defendants contend that the third element has not been satisfied. That element requires that plaintiff was qualified for the job. In the instant case, according to defendants, plaintiff was not able to fulfill her duties as a Deputy I at the time of termination. Plaintiff's medical restrictions included a prohibition on retraining of inmates, an integral component of her position.[5] Accordingly, defendants conclude plaintiff was not qualified to perform

---

**4.** Plaintiff has identified several male deputies who have been accommodated with assignments of light-duty following various injuries or the recognition of various medical conditions. For example, Dennis Nash allegedly was allowed to remain employed as a Deputy II, which requires the transportation of inmates, even though he was restricted from using a police vehicle. Similarly, Lawrence Clark who suffered from sleep apnea and Mike Carolyn who suffered from epilepsy were removed from road patrol, and Keith Parent was restricted from carrying or possessing a firearm. *See* Plaintiff's Brief in Op-

position, pp. 5–6. It is significant, however, that although these accommodated deputies are all male, plaintiff at her deposition admitted that she was aware of other male and female officers who were told, just as she was, that they would not be allowed to return to work because light-duty positions were not available. *See* Depo. of Susan L. Hoskins, p. 72, attached as Exh. A to Defendants' Brief in Support of Motion.

**5.** *See* discussion, III.A.2., *supra,*

her job as a deputy, and thus has not met her burden of establishing a prima facie case.

The Court finds that plaintiff has failed to establish her prima facie case under Title VII. Although plaintiff has produced evidence that male deputies have been accommodated in the past, plaintiff has failed to satisfy the third element of her prima facie case, to wit: that she was qualified for the position she lost. Her only support for this contention is that "her performance was exemplary." *See* Plaintiff's Brief in Support, p. 18. However, as discussed above with respect to the second element of plaintiff's claim under the ADA, plaintiff was *not* qualified to perform an essential function of her job as a deputy, i.e., restraining of inmates. Following her injury, plaintiff was not qualified for the position, despite the fact that prior to the accident she may have been an exemplary employee.

■ Assuming *arguendo* that plaintiff were able to make out her prima facie case, the burden of production under *McDonnell Douglas* would then shift to defendants to demonstrate a legitimate, nondiscriminatory reason for the termination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Defendants are able to meet this burden. As defendants maintain in their brief, plaintiff's termination was not motivated by gender but by the fact that plaintiff was unable to fully perform the duties required of the Deputy I position following her accident. Defendants maintain that plaintiff would not have been able to respond in an emergency situation due to her injury, and would thereby place other deputies in jeopardy. These conditions certainly satisfy defendants' burden of asserting a legitimate, non-discriminatory reason for the adverse employment action. Accordingly, the burden now shifts to plaintiff to rebut this assertion.

Plaintiff does not rebut this proffered non-discriminatory reason nor does she show that this reason is a mere pretext for gender discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Plaintiff is only able to proffer evidence of other deputies who in the past have been accommodated. However, this evidence is insufficient to show that defendants' actions were pretextual. Although these accommodated deputies are all male, plaintiff at her deposition testified that she was aware of other male and female officers who were told, just as she was, that they would not be allowed to return to work due to the fact that light-duty positions were unavailable. *See* Depo. of Susan L. Hoskins, p. 72, attached as Exh. A to Defendants' Brief in Support of Motion. As a consequence, plaintiff has *not* shown disparate treatment sufficient to rebut defendant's assertion of a non-discriminatory reason for plaintiff's termination.

In summary, plaintiff has failed to make out her claim of gender discrimination under Title VII. Even if able to establish a prima facie case, plaintiff has failed to rebut defendants' legitimate, non-discriminatory reason for her termination. This Court therefore holds that there is no genuine issue of material fact with respect to either plaintiff's sex discrimination claim under Title VII or plaintiff's disability discrimination claim under the ADA. There being no need for a trial on these issues, the Court will grant defendants' motion for summary judgment as to both counts in plaintiff's complaint.

### *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' motion for summary judgment is **GRANTED;** a judgment in accordance with this order shall be entered forthwith.

**SO ORDERED.**

*See Thompson,* 121 F.3d at 539.